And we'll hear first from Ms. Bukur. Did I pronounce that correctly? Yes, your honor. All right, you may proceed. Thank you. Good morning, your honors. My name is Karen Bukur, and I represent the appellant Mahsa Parviz, and with the court's permission, I'd like to reserve five minutes for rebuttal. This case is about the recent Supreme Court case in Dubin. Ms. Parviz's conviction at count two for aggravated identity theft should be reversed due to the Supreme Court's recent decision in Dubin, which clarified that Ms. Parviz's conduct charged at count two does not violate the aggravated identity theft statute. The court narrowed the interpretation of the word use. Count two alleged that Ms. Parviz used the name of a gentleman named Mr. Barker in relation to the offensive false statement in a passport application. And Ms. Parviz argues that she did not use Mr. Barker's identity in violation of the aggravated identity theft statute because his identity was not at the point that a defendant uses another person's means of identification in relation to a predicate offense when this use is at the crux of what makes the conduct criminal. So in this case, the crux of the fraud was the statements in the letter, the statement that the child could not appear because she was sick, because she needed to go to the UK for surgery. The name of the doctor was in the name of any doctor. The reason why the clerk at the passport office granted the request for expedited transcript without the presence of the child were those statements. But the statements have no value unless they come from a doctor, and that it was essential to have a doctor-supported rationale for why she wasn't going to show up in person in order to get the right at the crux. Because it could have been any doctor, and it didn't matter which doctor it was. But she wasn't a doctor, so she needed to take on the identity of some doctor for the purpose of putting this letter in, in order to, you know, hoodwink the agency into issuing the passport without seeing the child. The Supreme Court in Dubin, the rule in it is the identity had to have mattered. It had to have been the key mover, and if you listen to the... So it matters whether it's Dr. Jones versus Dr. Smith as opposed to the fact that she's not either Dr. Jones or Dr. Smith. She wasn't claiming she was the doctor. No, I when in fact there's no one behind this this letter, so she's she's taken over the real identity of an actual person who she says is saying these things. That was not important to the case. Mr. Roach, the passport examiner, he testified and he said he received a letter, and he read it, and the child wasn't present. The child wasn't present because the doctor said she was sick, she couldn't appear, and she had to go to the United Kingdom for surgery. So he checked the Foreign Affairs manual and learned there's an exception to a child not being present if there's health reasons. So the reason why he expedited the passport was because of the of her health, and when he testified, that's what he said. But her health could only be proved by having, I mean, it was proved by having this letter from a doctor. Right. So the doctor said, I mean, the passport examiner said, I checked out the hospital, it was indeed a hospital, and then he said, and then, you know, I checked out the doctor's name. I believe he worked at the hospital. The doctor's name was not important. It was it was just that he was a doctor. Well, but if under that reasoning, if it had been the name in the letter of hospital, wouldn't that have been relevant to the examiner? If it had been, you know, Joe Smith, and the examiner looks up the name, and that's not the name of anybody who's ever worked in a hospital, would that not have been relevant? That's, those are different facts, because that's not what happened in this case. He believed that this doctor worked at the, at that hospital, and there's a statement. But you, as you just described it, he said that he tried to verify that someone with that name worked at the hospital, correct? Is that what you just said? Yes, as a doctor, but it could have been, my point is, it could have been any doctor. It didn't matter. I guess in looking at the text of the statute here, we're talking about a means of identification of another person. Is misrepresentation as to another person's profession a means of identification under the statute, or does it have to be a use of the person's actual name and identity? I think that's what we're getting at here, is, well, if she's misusing his identity as not a doctor, that might point in one direction. But if the statute's about the misuse of his name and identity, regardless of whether with his consent or not, he was actually a doctor, that would be outside of the statute. So how do you read the means of identification of another person? Does it involve false pretenses about one's profession as opposed to one's identity? The Supreme Court said something, it says to be clear, being at the crux of the criminality requires more than a causal relationship, such as facilitation of the offense. So his name as being a doctor facilitated the offense, but my point is, it could have been the name of any doctor. Does it matter whether Mr. Parker consented to the use of his name on the letter? That's not well developed in the trial testimony, maybe the standard review governs that, but should that matter whether he consented or not? I read through his trial testimony last night, it was very vague and unclear. He said he was drinking a lot at the time, but there was a point in the transcript where he said he didn't think that's an issue in this case. Could he consent to the use of the signature? He could, but if it's for an unlawful purpose, I still, I don't think that saves the day. Well, what do we do with that then? Because we have cases, Dubin saves, I believe, our prior reading of without lawful authority, and I think the Osuna case and others somewhat broadly say that the without lawful authority is met, the suit of itself involved consent, is met by doing anything illegal in the use of the person's identity. So how do you get around that, given that Dubin doesn't touch the without lawful authority line of cases? Because I think it's what, it was passport fraud, and what made the fraud was the statements that she couldn't, the child couldn't be interviewed. That's why the clerk said, I'm going to expedite it. He did not rely on that, the name of the doctor, and there's a case cited by the government in the 28-J letter that I think kind of helps and illustrates this. It's the crop case from the Fifth Circuit. In that case, the defendant owned a dog training company, and in order to offer training to veterans and to receive funds from the government, the instructors had to meet certain qualifications, and the defendant in that case misrepresented the qualifications of the instructors, and here there was aggravated identity theft because the defendant's misrepresentations was about who was teaching the course. That was important. That's how they got the funding, and that's why the case. Suppose someone shows up at the door of the House chamber of the Congress, and they have a letter from the member of Congress that's totally phony, and it's got a phony signature and a phony seal, you know, on the looks like official stationery, and they say, this is my letter from the congressman authorizing me to come on to the floor. Is it your view that that wouldn't be because there's 435 members, and it just doesn't matter? So, I mean, that's what I don't understand. You're actually taking the identity of a real person and putting it onto a document that is central to the accomplishment of the offense, and yet you're saying that's not the crux, so that's what I know I'm having trouble with. In this particular case, because it was false statements in the passport, it was having to do with the reason why the child wasn't there, and it didn't seem to matter to the clerk at the passport office who the doctor was. But the fact that there were other potential candidates for whose identity could have been stolen doesn't mean you didn't steal an identity in order to accomplish the offense. That's what I'm having trouble with. Sure, you could have stolen somebody else's identity and dress as well. So what? It's still at the crux. I don't get it. I think it depends on what affected the passport clerk. Does the record trial establish that she stole Mr. Barker's identity? I think we talked about that it's not clear whether or not he might have consented and that he did provide other forms of assistance with this scheme. Do we know whether her use of his signature was unauthorized, at least beyond a reasonable doubt? I read that part of the transcript last night, Your Honor, and he was very vague. He was very slow coming forth. He said he was, you know, drinking a lot. He couldn't remember, but there's a point in the transcript where he states, I did not write that letter. Isn't that then dispositive of your case? The what? Dispositive of your case. If he didn't, if he says he didn't write the letter and were to take that as saying that he did not authorize or consent to the use of his signature, are those the same thing, I guess, first of all? Yeah, I think we all know that he didn't. There's good evidence that he didn't write the letter, but do we know whether he consented to the use of his signature on the letter? I don't think that came out in the record. Okay. I did actually look for that. And there's another case cited by the government, U.S. versus GLAD, and I think it helps my point. This was a scheme to defraud an insurance company by billing for unnecessary prescriptions, and that case is interesting because it was two defendants. One defendant was convicted of aggravated identity theft and the other one wasn't. And the one who was convicted forged the name of the doctors and patients, and that went to the heart of the fraud to continue refilling the prescriptions. They needed those names in order to refill the prescription. The co-defendant who was found not guilty of aggravated identity theft, he misrepresented to the insurance companies that the was illegal, but it was an identity theft. So in our case, the statements that were written in the letter, they were illegal, but it was not identity theft. And that's the basis of my argument, looking at all these cases. And I believe the rule from Dubin is, does the identity matter? Was it the key mover? And in this case, I don't believe the identity, the name of the doctor was the key mover. The key mover was the statements that described the reasons why the child could not be present in the office, in the passport office. And I see my time has almost expired, Your Honor. Okay, all right. Thank you. Let's reserve the remainder of your time for rebuttal, and we'll hear now from Ms. Seiden. Did I get that correct? That's right, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Catherine Seiden on behalf of the United States. The defendant here used Brett Barker's identity in a wholly fraudulent submission to obtain an expedited passport for a child to whom she had no remaining legal rights. As Defense Counsel recognized in his closing argument at trial, the, quote, Brett Barker letter was at the center of this The letter lied not only about the fact that the child was immunocompromised and in need of emergency medical care overseas, but also about who authored the letter and who was providing that care to the child. Because in reality, the person who purportedly authored that letter and purportedly provided that care to the child had never even met this child. He had no relationship with her whatsoever. And because the lie was about who was involved and not just what services were involved, the defendant used Brett Barker's identity within the way that the Supreme Court and this Court have interpreted that term. So I want to clarify that the Dubin opinion did not disturb this Court's prior opinions interpreting the statute. On page 116 of the Dubin opinion, the Supreme Court specifically said that it was resolving a circuit split between circuits that had taken a more permissive, expansive reading of the which had not, which had taken a more tailored reading, and it resolved that circuit split in favor of this Court's prior opinions. Dubin also echoes the test that this Court previously articulated in United States v. Harris. In that case, this Court looked at whether the use of the identity was central to the fraud, and that language is echoed in the Dubin opinion. Ultimately, the test that came out of the Dubin opinion was whether the identity was at the crux of the fraud, but the language in the opinion mirrors this Court's prior opinion in Harris. The government show here at trial that he did not consent to this letter being submitted on his behalf. There was evidence suggesting that, Your Honor. The testimony from Brett Barker was somewhat ambiguous and suggested that he most likely knew something about this scheme, not necessarily about the letter itself. So the testimony was ambiguous there. However, as Your Honor observed, the Supreme Court's decision in Dubin did not disturb this Court's prior opinion in Osuna Alvarez, where this Court very unequivocally stated that the consent of the victim, it feels strange to use the word victim when it is someone who's consenting, but the consent does not matter. It is the deceptive use itself that matters. Well, that doesn't... I think there's a reading of Osuna that is consistent with that, but Osuna was really about the without lawful authority and consent. What are we to do with the possibility that Mr. Barker might have consented to the use of his signature on the use side of Dubin? Right, it seems to me that if we say that, if we say that Osuna, with our prior discussion of without lawful authority means that any illegal use connected with the fraud satisfies it, then we're not attending to what Dubin says use actually means, and Dubin did limit use. Dubin did limit use, Your Honor, but I think we need to read those two opinions together and consistent with one another, because under Miller v. Gammy, the Supreme Court's opinion in Dubin is not clearly irreconcilable with this Court's prior opinion in Osuna Alvarez, because they target two different pieces of the statute. Well, right, if Osuna is not dealing with use, but if Osuna is not dealing with use, and Dubin limited use to instances where the use was the identity that was, you know, the identity theft was central to the fraud, why isn't this case about use rather than without lawful authority? This case is about use, Your Honor. I would say it is about use, but in the Dubin opinion, the Supreme Court specifically said that there are three different verbs in the statute. There is possess, transfer, and use, and that those three verbs are doing different work, and it specifically said that you don't need to demonstrate that the identification was stolen, because the possession and the transfer are targeting the misappropriation component of the aggravated identity theft statute, and the use is targeting deceptive use, and so we need both. We need deceptive, excuse me, we could have either. We could have either the deceptive use or a stolen identity, but you don't need both. Well, the jury here was instructed that consent didn't matter with respect to either without lawful authority, which seems to be what Asuna says, or with respect, you know, and that would also cover use. What if Mr. Barker consented, and you've said that the evidence is ambiguous, I want to ask you about the standard review, but if Mr. Barker consented to a signature on it, is it still a use under Dubin just because he wasn't a doctor? Yes, Your Honor. Why is that his identity? Because it was both his name and his national provider index number, and his nurse practitioner number, those are all independent means of identification, and that's what the statute asks is, is his means of identification being used deceptively? And the answer here is that it was being used deceptively. I'd like to point the court to page 123 of the Dubin opinion, where the court said that identity theft is committed when the defendant uses the means of identification itself to defraud or to defraud the person involved, rather than just how or when the services were provided. But those were Mr. Barker's identification numbers, and that was his name. That's correct, Your Honor. And so if he consented to the use of all of those by Ms. Parvez, how does that come under the use? Because she still used them deceptively, Your Honor. She still lied about them. She still lied about his involvement in the child's care. Right, but that, so I guess I'm trying, yes. So she used them to commit fraud. I think that that's clear. The question is whether she used the deception about his identity to commit fraud, and I think that's also what the dispute is about here. I'm just trying to understand how broadly that identity sweeps, particularly if we can assume, as maybe we must if the jury was improperly instructed, that he consented. Well, a couple quick points on that, Your Honor. One, I think, I don't think the jury was improperly instructed here. Two, we do need to construe the light, the evidence in the light most favorable to the government. But even if that's the case, Your Honor, the, the... Fork is the phrase, without lawful authority, doing in the statute in a case like this. The District Court addressed that, Your Honor. The District Court pulled from the Osuna Alvarez case and said that the without lawful authority just means that it was used illegally. It was used in furtherance of the predicate crime. But that's in the prior phrase, during and in relation to any felony violation. That just makes without lawful authority completely redundant. Authority refers to authority, permission. You have, you've been granted a right to do something. It sounds, I mean, maybe, I guess we're bound by Osuna, but... I think that's right, Your Honor. Reading of the statute, so... Yes, and maybe there is some redundancy in the statute, but I do believe this court is bound by Osuna Alvarez. And to, to respond to Judge Johnstone's question, the... It's not just that she lied or didn't lie about his involvement. It's, is the underlying fraud or the underlying misstatements, because this was a false statement in a passport application, did she make a lie about his identity in those statements? So even if he were consenting, the fact that she lied about his care for the child, and she was complicit in the lie about whether he was caring for that child, means that she did use his identity deceptively. Does that set of deceptions go to the who and how? It does go to the who, Your Honor, because again, in the, in the Dubin opinion, the Supreme Court said that the deception occurs if it goes to who is involved rather than just how or when the services were provided. And here, obviously, Brett Barker was not treating this child, child who had not met her, but it wasn't just a lie about her care. It was a lie about his identity. And so we might have a different outcome here if Brett Barker were, in fact, her treating physician, and the lies were confined to her need for services oversee or the exegesis. What if he, what if he aided and abetted or assisted in some way and said, here's all my information, go ahead and use it. Maybe it was unclear to her whether that was sufficient to state his medical credentials. Different case? No, Your Honor, because she still lied about whether he was treating her daughter, and she knew that was a lie, and there was sufficient evidence of that. That's the fraud. That doesn't go to the who. It has, in order to get the aggravated identity theft, don't you have to establish that it's the misuse of another person's identity? If Mr. Barker were himself passing himself off as a physician and providing Ms. Parvez this information, how would that be her misuse of his identity in a way that goes to the who? Because her false statements, her underlying false statements, which is the predicate crime here, are about the service that he was providing to her child, and he was not involved in that medical care. That was a lie, and it was about who was involved in the transaction. So if he was a doctor and otherwise satisfied everything, and she was simply lying about whether he'd actually attended to her daughter, aggravated identity theft? Yes, Your Honor. The false statement would be that he's providing care to her doctor. She would be lying about who is involved in the transaction, and I think this... But he is involved. In that hypothetical, is not he involved in the transaction? He's not involved in the medical care of her daughter. But the fraud goes to whether he's caring for his daughter, whether he's caring for her daughter, not whether he is the person represented in the letter. I agree with you, Your Honor. The fraud goes to whether he is caring for her daughter. And so if she were lying about that, whether he's complicit in the lie or not, she is still being deceptive about his participation in that transaction. Well, I think, I guess, my problem with that is that Dubin suggests a concern about basically just doubling up any federal fraud crime, where all you're doing is... There's already a deception here, and that if that deception involves another person, whether or not that person's... The misuse of their identity is part of that. It sounds like that's just a doubling up of the fraud here that they caution against in Dubin. I understand that, Your Honor. But one of the things that this court has recognized in its prior opinions is that the purpose of aggravated identity theft, it's not just to protect the victim. It's also because when a defendant lies about who's involved in a transaction, it makes that crime harder to detect and harder to address. And so it's not just the case that we're trying to protect victims, and that's the only thing that makes us aggravated. It's about the lie about who's involved. And I think one of the things that would be helpful is looking at the prior cases from this court and in Dubin. In Dubin, the lie was about the qualifications of the employee who actually did provide psychological services to real patients. In Hong, the lie was about the nature of the services provided because the massage services that had, in fact, been provided by real treaters to real patients were not Medicare eligible. So in both of those cases, the lie was about the what, not about who was involved in that transaction. And in contrast, in this court's prior opinion in Harris, the lie was about who was involved because the speech pathologist there, who was a real speech pathologist working for that company and had had a relationship with that company and patients at that company, she was actually on maternity leave at the time of these appointments and at the time that they occurred. So these appointments never occurred. The service was never given. So there was a lie about the what, but there was also a lie about the who. And the lie about the what was tethered to the lie about the who. And that's even more so the case here because the lies are both about care that never occurred and the person who provided it. And Brett Barker's identity here, and this is something your honors all observed to my colleague, lent credibility to the fiction here built around this medical provider. And in fact, the passport manager testified at trial that of the hundreds of thousands of applications that he had reviewed, he could think of maybe two to three times when the minor was not present as required at the appointment, and that he specifically went forward without the minor there because the defendant, quote, presented a letter from a physician stating that the child was medically unable to be present. He also testified that he actually went the up Brett Barker. I guess if it turns out that consent is material, not just to without lawful authority under Asuna, but also maybe under a theory that is not the government's also to use, was the jury not improperly instructed by the court giving the government's consent as immaterial instruction? The jury was not improperly instructed because that was consistent with this court's prior opinion, which is binding. But that depends on the without consent. I mean, it wasn't saying without consent for purposes of without lawful authority. It's a without consent. Consent doesn't matter at all. So if consent, which doesn't matter to without lawful authority, see Asuna, does matter under Dubin, that would be misinstruction, would it not? It would possibly, your honor, but even in that case, this court would be required to analyze whether it affected the outcome of the proceeding. And again, there was a significant amount of evidence that she did not have Brett Barker's... Is the standard beyond a reasonable doubt, then, it would have affected the outcome? Well, the standard wouldn't be beyond a reasonable doubt. The standard would be, I believe, evaluating the light in the... Excuse me, evaluating the evidence in the light most beneficial to the government. And there was... Well, it depends on whether you're looking at sufficiency or a legal error in the instructions. Correct, your honor. If there's a legal error in the instructions, then the standard for is under neater, and that would be that looking at the record as a whole, you could say, beyond a reasonable doubt, that it didn't make a difference. So that would be a standard not favorable to the government. Yes, your honor. And the 11th Circuit actually... And I see I'm out of time, or nearly out of time. If we're asking you questions, you can keep going. Thank you. The 11th Circuit just addressed this in Gladden, which is the case that the government submitted on Tuesday and that my colleague just referenced and found that even if legal grounds for challenging the instructions have subsequently arisen due to a new rule of law, there is plain error review. And actually, in that case, there was a blatant error in the instruction because part of the instruction directly contradicted the court's decision in Dubin. Wasn't this portion of the instruction that said that consent doesn't matter, wasn't that objected to below in this case? It was objected to below, your honor, but not because it was legally inconsistent with the 9th Circuit law. In fact, defense counsel conceded that he did believe it was consistent with 9th Circuit law under Osuna Alvarez. He said that they disagreed with that law, but he did concede that that was entirely consistent with this court's prior opinion. And nothing about Dubin has disturbed this court's prior opinion. Let me ask you about the concluding section of Dubin because here's how the courts, when it applies it to the facts of Dubin, it says here, petitioner's use of the patient's name was not at the crux of what made the underlying overbilling fraudulent. The crux of the healthcare fraud was a misrepresentation about the qualifications of petitioner's employee. The patient's name was an ancillary feature of the billing method employed. The Sixth Circuit's more colloquial formulation is a helpful guide, though like any rule of thumb, it will have its limits. Here, however, it neatly captures the thrust of the analysis as petitioner's fraud was in misrepresenting how and when services were provided to a patient, not who received the service. Why doesn't that support her notion that here it just... It didn't matter who it was and it didn't matter what the name was ancillary. What mattered is that there's a false representation of medical services being provided and a medical condition being described and the who was ancillary. Your honor, because in that case, the lie was not about who was involved and here the lie was about who was involved. Regardless of the consent issue, it's about who was involved in the child's care. She knew it to be a lie. The evidence conclusively established that and my colleague's argument about we could have subbed in any name here misrepresents not only the holding of Dubin and the examples given in the Dubin opinion, but also the record in this case. As to the Dubin opinion, on page 117 to 118, the court gives the example of a pharmacist who swipes info from the files and uses that to open an account in a patient's name. Now, if my colleague's interpretation of the opinion is correct, that hypothetical would not be aggravated identity theft because you could sub in any patient's name to open the bank account. It wouldn't matter. So clearly, it does matter. It doesn't matter. There's no requirement under Dubin that the identity be uniquely qualified to advance the fraud. To the contrary, the question is just did the defendant lie about who was involved when he made the underlying fraudulent statement? And my colleague's interpretation also misstates and misinterprets the record because the testimony, again, from the adjudication manager was that he actually did do the work of looking up Brett Barker. Just so that I make sure I understand, your point is that the who is at the crux of the lie because even if he consented, the lie is that he was involved in giving this care and that was untrue and that's a who connection that's at the crux. Am I understanding you correctly? That's exactly right, your honor. And that is what was doing the work here. The crux of the false statement in the passport was I am this child's doctor and she needs this care and she is in trouble and she cannot be here for her appointment. That's what was doing the work. That was a lie, whether she had his consent or whether she did not. Okay. Thank you, your honor. All right. Thank you. All right. We took your opponent over time and we asked you a lot of questions, so I'm gonna give you the five minutes that you had asked for originally. Thank you, your honor. I just wanted to point out the reason why I believe the Dubin case came around. The court was concerned that the predicate offense had no mandatory sentence and if that fraud involved any kind of name and number, the government can just tack on an aggravated identity theft and then there's a mandatory consecutive two year sentence. And I think that's the reason for the case and the reason why the court narrowed the definition or the interpretation of the word use. In this case, I believe Mr. Barker's name was ancillary to the whole fraud, the fraud was... What's your response to the argument from the colloquy I just had with counsel that the name, the who, is still at the crux because the false statement is a statement about actions he was doing in a relationship that he had and that was untrue and that makes the name at the end and say those things. His identity was not the key mover. Some other person can come in like Dr. Smith, Dr. Jones, and said the same thing. In the case with the pharmacy that the Supreme Court discussed, the pharmacist who swipes information from the pharmacy files and misuse of the patient's name would be material of what made the conduct fraudulent because those names were used for the bank accounts, their name, their social security probably, to open up bank accounts, so their names were needed, that their identity was important, it was a key mover. But in this case, the doctor or Mr. Barker's name is ancillary and I believe... The testimony is that he looked it up. Your Honor, thank you for reminding me about that again. He looked it up, but what he said was, oh, yes, he's a doctor and he works there. He wasn't a doctor, but he was a nurse, right. But it could have been the Dr. Smith or the Dr. Jones and I don't believe he found this doctor's name, Dr. Barker's name because he wasn't a doctor there, he was a nurse. But it didn't seem important to the clerk. I think that's also part of my point. It wasn't important to the clerk who the doctor was, as long as it was a doctor. Identity is a name of a person. And in this case, the identity could have been... Why wouldn't the licensing information and the use of his numbers, which again were accurate but did not pertain to a doctor, why wouldn't that be included? I think your friend argued that that was part of the who, the fact that he had a doctor's license and these numbers were part of his identity. Does that bring his qualifications into the who? No, because he really wasn't a doctor. He wasn't a doctor. I don't believe so. It was a nursing numbers. And it could have been any... The point is, the reliance was on the fact that she couldn't appear because she was sick and she had to go to the UK. It didn't matter who the doctor was. Well, it mattered that she had supposedly seen a doctor who had specifically treated her. It seems closer to the bank account example than to an ambulance, where it doesn't matter who's in the ambulance. Here it mattered. It mattered that he had supposedly seen her in his practice and made a medical judgment about her. Going back to my same argument, I don't believe it was the key reason why the clerk processed the application, and that was the fraud. That was the fraud, that the clerk processed the application based on fraudulent information, and it was irrelevant who the doctor was. What was relevant and what was the fraud and what was the crux of the criminality was these false statements about the child not able to appear and had to go to the UK for treatment. No further questions. Thank you. Alright. Thank you, counsel. Thank counsel for both sides for your arguments in this case, and the matter is submitted for decision.
judges: COLLINS, THOMAS, JOHNSTONE